Good morning, your honors. My name is Keith Swisher, and I represent Mr. Seymour in this direct criminal appeal. I would like, if possible, to reserve three minutes of my time for rebuttal. Thank you very much. To the extent that I permit myself, I would like to discuss with you three particular issues, two on Indian status, and one particular case in sentencing. Can I have the phone number, please? Oh, absolutely, yes. I'm going to record that here. Okay, sorry. If possible, I'd like to discuss with you, subject to the force of any of your questions, on three particular issues, two on Indian status, and one particular one on sentencing. Mainly, the lack of Indian blood, and the date of the certificate, which there are certain interpretations, a decade later than the date of the first offense. And then lastly, the portion that the district court relied in part on unproven molestations of unknown victims. With respect to the first issue, the blood issue, this is the extraordinarily rare case in which, in the record, there is neither a blood quantum for Mr. Seymour, nor is there any testimony about his parentage or other lineage. The Bruce Stencils, like the two youngers are familiar with, including as was recently reaffirmed in Zepeda, requires, one, some proof of Indian blood, and two, membership or affiliation with a federally recognized Indian tribe. This essential element is at several courts, including the courts that held that it must be put in the indictment, given to the jury, and proved out beyond a reasonable doubt. And of course, that fits the government's burden. With respect to the first problem, this blood connection, which is absent from the record, it requires blood connection to one sovereign political community, an ancestry that predates the rivals of the Europeans. Now, of course, as a number of courts noted, it's hard to prove that. But what you do prove, at least, is the blood quantum or evidence of a parent or grandparent who's clearly identified as an Indian. Notice, that's coming, for example, from Risa Ramos and other cases, and that's a case of the government-sided copy. But the notice is just evidence of a clearly identified parent or grandparent. And then in notes, after that, your honors, reliable or undisputed documentation that a defendant has Indian blood or testimony regarding the defendant's ancestry may meet this requirement. And notice, this is what's so great about this case, we don't have either one in the record. Additionally, I'm sure you've read the Bruce case and Emily, Jeff Reimer, actually dissented in that case. And she noted sort of the context here. There's actually many non-Indians on the reservation who have various ties, some minor, some major, with the Indian. And in fact, as she noted, quoting a Supreme Court case, the total of non-Indians on a reservation is generally greater than the total of all Indians. So there is sort of an intermixing where I, myself, live in Arizona, I'm on the reservation, I'll be kind of shopping, et cetera, and whatnot. And I don't have, to my knowledge, any lineage in Indian blood in the U.S. afflicted tribes. Hey, Mr. Andrew, let me ask you, because I know you've handled these cases before, does this particular tribe receive blood collection records as part of its tribal records? Is this a situation where the government simply didn't ask for enough information in the tribal affidavit that they obtained? I think that's correct, Mr. Chauvin, because a couple of things. First of all, in other, I mean, these aren't in this particular record, but if you looked on Pacer and other White Mountain, Apache, or Uprising prosecutions, you'll see that the government actually puts in the record the blood font. In addition, the tribe, here's what's so useful to you, the tribe is required to keep blood font, among other things, like date of birth, date of enrollment, et cetera. It's supposed to be in the record. As I pointed out in Note 6 of the reply, and there's other general resolutions to that, the records are not in good shape. And they've had to be updated, you know, numerous times, and they've admitted, quote, honorary members before. I don't know if those appear on the rolls or not, but they've admitted that, let's say they'll see more as, you know, sort of tribal council resolution or whatnot. And in fact, I mentioned this sort of, as an aside, but just to give you an example of sort of the state of the records, you know, they're required to keep blood font, et cetera. In the 1987 government code of the White Mountain Apache tribe, it actually says most, if not all, Indians or children born after 1958, which would include Mr. Seymour, who was born, I believe, in 1961, are not qualified because they haven't officially enrolled to file their proper application documents with the tribe. And so then it's giving them an opportunity to do so again if the parents file an application and a birth certificate showing their parentage and whatnot. And then, if so, then the tribe has to vote, the tribal council, that is, has to vote majority to actually admit them. So there's not resolution either. So, but yes, to your honor, absolutely, that's supposed to be in there. And the government does, as a matter of course, bring in blood quantum. It's a great way to show that there is a blood connection. Hopefully, Carole, I'll let you go first. I have a question to say about the relief you're seeking. I gather it's to interject a quote on all counts, right? Yeah, so the essential element that is kind of what's being Indian in 1153 prosecution runs for all six counts. There's not a crime of general accountability here. These are all major crime taxes. So, okay, go ahead. I'm confused with your question, Judge Wagner, follow up with all two. So, in short, I do think the correctly clear answer on the law and facts in this record is actually against reversal of the remand or judgment of a quote on all counts. And can I just real quick on that? That sounds extreme, particularly because he's alleged to be on charge of very serious offenses. A couple of points on that. He's been in prison now, jail, and then prison for seven years. So it's not like he would just walk free. Also, the tribe and or federal. He wouldn't walk free from this point forward. Sure, he wouldn't get credited anywhere, money or anything, in that seven years. And then the, in addition, the tribe or the government is claiming, sort of outside the record, that he's committed other offenses. It's absolutely a crime. I'm not encouraging that crime. I'm saying they absolutely do have to do that. Those considerations are relevant in this law. So my follow up question is, you certainly have cases like Cruz, in which the government just had a plot chance that it would, you know, judgment of a court, and that's the end of the story. But I mean, isn't it the case that in the most cases, I think, at least the Indian satisfaction was contested in the trial. And I'm just wondering if it matters. Also, people over there, where the defendant doesn't, I don't think the defendant here put on any attempt to contest the status of the Indian. He didn't object to the full jury instructions that were given. So basically, sort of the government standpoint, they just said they're not, I'm not saying they're not excused for what they did here. But I could see how they might think, well, there's nothing, we're just not fighting this. The jury instructions are all in support. The jury was in a community group with the Indian. I think we've done that. So where could you go? I'm just wondering, in that situation, does the government get another chance? Is there any kind of exception? I can say, well, the defendant just completely drops the ball in the trial to contest a particular element, and it turns out that the government's evidence is insufficient. That's a great question. And the, first of all, with Bruce in 2005, Bruce in 2009, the elements of what you needed to prove include some evidence of Indian blood where, you know, everyone should have been aware of it at the time. To your point, though, if there is, you know, some way, I don't personally see it, but if there's some way in which this is more of a Lockhart versus Nelson case, in other words, because of, for example, that Dr. David was erroneously admitted, et cetera, there's enough where it's more in the lines of an erroneous, or in fact, the instructions were erroneous, too. Then it would be a remand, and the government would get another shot. So there is that sort of, if you don't go with the first approach, there is the second one where, yes, the government would indeed get another shot. Does that make sense to you? Well, I'm wondering if you think that there is an exception to the general rule that the government gets a trial shot, and it was implicit, that's it, in a situation where the element wasn't contested in trial. Because there has to be a set of cases in which there's some intermediate change in the law, and behind it, let's say, an additional proof that the government was required to prove that nobody knew it at the time, and in that situation, you said, oh, you can get a small degree, but here, as we find out, there wasn't any uncertainty in the law. The government should have been able to do that and prove as implicit, that he was trialed since 2011. Yeah, we'd absolutely agree with it, except I would note that it raised a confrontation clause, errors that create self-indication errors. If one of those errors, for example, were the basis in which we were to reverse, then the government indeed would get another shot, because that's how Mr. Lund's official statement is. So, you're saying that even if that, whatever that thing is called, is it tribal equivalence or something? Oh, well, here it's called a tribal affidavit, yeah. Whatever that says, and even if that thing was probable, that's still not enough to prove the blood equivalence. Oh, I see. What I think we'd have to do further is if the government's made this argument on appeal about the tribal constitution, if it gets used through, I would say, aggressive use of, you know, sort of interpretation of the constitution and judicial notice, et cetera, but it gets to the point where there's an inference there, and it just, you know, is against the weight of the evidence or whatnot, or is into it, then there too, the government would get another shot. That's the way I read it, no, the government wouldn't get another shot on these particular six counties. Maybe this is too simplified, but I sort of look at this case as analogies to a federal bank robbery prosecution, where the prosecution just flat out forgot to prove that the bank was federally insured, and like there's this missing element that's jurisdictional in that situation, and double jeopardy attaches, and we reverse these three. Judges, this is exactly the way I look at it. In fact, particularly on the Indian blood issue, they obviously tied with enrollment, even though by embracing evidentiary protections, but the inconstitutional protections, but they tied with enrollment, but on the blood issue, it's just this. Well, his district court, as I understood it, found that he was an Indian, and so instructed the jury to admit him, and do you know on what basis the district court made that rule? It wasn't my reading of the record. I thought, this way I remember, maybe I'm wrong, but is that the district judge said that the jury had to find that he's an old Indian, and then it left it down to the jury. But it didn't tell them how to do it in terms of what quantum and ... No, and Chris was very clear that you were supposed to instruct, you know, what ... There was no objection to the solicitation. No, there was no objection. Or there was, of course, an objection on the confrontation clause issue. No, and I know in the first case ... But in most cases, they simply before us point an error or review. It is, yeah, for the most part, so for the insufficiency of the evidence, but the civil rule 29 in a renewal of said, you know, certificate of acquittal, but that gets into the, you know, the credibility of the witnesses, and, you know, whether or not drawing the inferences in the light most favorable to the verdict, the jury resolved those issues. Alex, I guess, can I just ... I'm very interested in your response to that, but I thought you were taking the position that he made a rule 29 motion, but he didn't specify any kind of ... And so that goes to insufficiency of the ... And so if it turns out that participating was insufficient evidence to prove that, how am I going to do since he's entitled to judgment of acquittal on all accounts right now? That is true. On the insufficiency of the evidence, I do think that's the case. And the search has talked about a couple of times how plain error and the Jackson review standard after Neville's was that it isn't all that much different, so I'm not sure I still have to show you that the result would be different. I would like to point that if all defense counsel said was, I mean, your rule 29 motion, which in law is a challenge to the sufficiency of the evidence to establish each and every element of the crime that broke the unreasonable doubt, that's sufficient to preserve the objection. I agree with that. Are there any answers? Oh, I didn't see. I mean, I'm going to ... You can absolutely say that that's fair, but I'll thank you very much if you see through it. Yes. Because it needs some more clarity on the tribal affidavit, which seems to be the centerpiece. The tribal affidavit itself, would that be sufficient for a jury to confirm, based on the affidavit, that the blood quantity was there? No, Your Honor. The test, I know other circuits have a slightly different test, but for 9th, there's two elements. One is the blood prong, which we've mostly been talking about. It would be redundant if you could just infer it, because, as Casey knows, the most common way you prove the second prong is you show the enrollments certificate or hear the tribal affidavit. So, that's a hint that you don't even need the first prong in it. That would have other implications, all the way back from Rogers, where they were concerned that a non-Indian would be adopted by the tribe to avoid prosecution. It would also have 1152 implications, too, if it's read too broadly. In other words, sure, it seems like, yeah, if you ruled against Mr. Seymour, it would obviously hurt Mr. Seymour. But it's a broad interpretation. It's going to help a bunch of defendants on the 1152 cases, including one that's not approved, because they need to show to get out of it that they are Indian. And then once they raise or meet their burden of protection, then the government has the burden of proof beyond the reasonable doubt to say that they're non-Indian. So, if you make it easier to prove that you're Indian, it will have implications other people can too. So those reasons, I suggest that it's not sufficient in and of itself. Even accepting the evidentiary and confrontational observations with the certificate, I think that would adequately respond to your questions here. Thank you very much. Thank you. Thank you. May it please the Court. My name is Hillary Lance. I represent the United States. I want to start by addressing one of the Indian status statements that was interrupted. I think it helps address a lot of the questions the Court has already raised. The evidence at trial of Indian status was not made undisputed, but it was fairly voluminous, and it came from a variety of witnesses. I think that it's helpful to break it into things. I can't embrace any of it. You can, I guess, spend the rest of your time talking about that, but I just want to focus a little bit on it, because I feel that you were part of it, and I think it's certainly well-deserved. I want to be very clear on this. Blood quantum is a phrase that first applies to just a kind of scientific connotations. There needs to be, in these cases, some piece of paper from the French department in order to be this important. And then it's not moral or testimony about the lineage of the parents. I grant you that you don't have a piece of paper, but you do need something that says what group is this person's parents, and there wasn't any in the non-testimony. I disagree. There was no jubilant testimony about the parents. I want to suggest that there are an array of pieces of evidence, but there's this jury under the generous counsel that came from the French department. And what I really want to settle on is the major EPA testifying trial that is on ER page 496, that Mr. Seymour is an old member of the tribe, comma, is an Indian. The element that we need to approve, really, is not, I mean, that's your best piece of evidence. In fact, if it's going to go down over a year, I think you're in trouble. Well, that is not remotely sufficient to establish a point in quantum that an agent with no foundation provided just says, I think this guy's an Indian. And you love each other. I don't know if you can see the discrepancy. It looks like the U.S. is sort of having too much time on it. But, for example, if you had a felony possession case, the agent is well-understanded without objection. One of the felons got his foot in the student's head. Yes, he's a felon. He didn't provide standardization on what the underlying conviction was. He didn't talk about the circumstances of it, why that crime had any or more punishment. I think a good reason for most of these cases is that when you have undisputed testimony about an element and it's not disputed at any point, you don't need to witness a standardization objection, and he articulates the actual standard to get a list of those. He didn't. He just used a colloquial term. And we know, because the law requires this very refined set of proofs, it's established that the agent's testimony doesn't really come close to associative beliefs during the time. Yeah, I can see that. I think the reason almost is important on this when he talks about when there's undisputed evidence, there's no need to verify demographic information. That wasn't the only evidence in the statute. You have an affidavit showing he's a member of the tribe. You have agents confronting ethical testimony. And then there's five other substantial pieces of evidence that I think are important to keep in mind. I think the defendant was initially investigated by the tribal police in the area of Indian Affairs. His blood nephew, JB, and I think this is crucial, but there's 20 years. This was his sister who was treated in an Indian health services facility. And basically after that, until 2008, as a result of the 2005 court hearing, they found new people with Indian blood who could be treated that way. So that's a fair reference. Indian health services became under evidence, and I suppose it's possible that somebody else could be treated there, but I think that it's due to violence and it's due to a group of humans, and it's possible that it gets incited. I mean, even if it had to do with blood, do you know who it came from? The defendant cited a few individual pieces of evidence. The evidence tells me that the defendant's sisters lived on the reservation, and he lived on the reservation for nine years. And I think this is another important point. In 2005, he and his wife were allowed into an adult who was thought to be bringing in a foster child from the tribe's social services facility. On top of all of that, there was evidence that he was an Apache speaker. He not only had an Apache interpreter in trial, but both the agents that he testified about his questioning talked about his, whether he was an Apache speaker or not. So I think, again, evidence is very generous. It can infer, I think, from that, how that undisputed evidence in a case where this element wasn't even contested, that somebody who's an Apache speaker would typically acquire likenesses that they're earlier on in life. The family members of the reservation who were an undisputed enrolled member, we have witnesses saying that he did, were bringing in children from the tribal foster set up in the system. And I think under Nevils, one can make inferences about who one's parents were under those circumstances. Nevils was the case where the guy was sleeping on the couch with the automatic weapon on his chest, which was what the body possessed. I mean, with all due respect to our three judges panel, that was not a hard and brief decision. Well, I mean, it's when the point for Nevils in the fact that he's the scanner to review the telephone cards he had needed for speech. But since you said the evidence is, by definition, a weighing process, we have to conclude that your rational jury could look at all of his evidence and reach the conclusion that proof be unreasonable without establishing what's in it. Great, and it's like, I wanted to try to, to your point as a plaintiff, to talk about your briefs on the judgment now, and that's a couple of the undisputed fact of enrollment with the tribal constitution that meets the standard for having a jury as long as they're doing their findings. Okay, but let me ask you about that. So the tribal constitution was not put before the jury. It was put before the trial judge. Correct. You're asking, that's the first time the situation I was in. Yeah, and I think that that, and I'm talking about why that's appropriate. Well, because you have a case, it's actually one of the FDIC cases that you saw referred to James, but basically all year before that, the exact time it was tried by the judge was when he said, no, that's not, you can't do that. What it means to you, I think, is that the type of thing that you're asking to introduce across units in tribal constitutions is the quintessential type of thing, where it's the legislative bill, it's the human duty bill, it's whereas FDIC in some instances typically is the condition to recruit the witnesses. Nobody could dispute whether or not what the constitution says. And for the same reasons, this court is a case, it's okay, and it's purposeful to take judicial notice without a register. It's because we don't want juries making inconsistent determinations on what a tribal constitution says that would be in juries to determine sovereignty. I'm sure some of you know what you're doing. So, going back to Neville's, the questions under Neville's, the two-part test is first, we take all the evidence, we submit it, we resolve all the governments, we resolve all the interests of the African-American people. And I want to focus on, this is the language from Neville's, on how you do step two, is you ask, okay, but how a hypothetical, properly instructed jury could have written this evidence? In this case, everybody can see that the jury instructions were bad. The jury instructions just said, you need to read it again, it didn't spell out what the problem is, it didn't spell out the percentages, it didn't say what the problem is. So, for purposes of this court's efficiency analysis, you are already doing an analysis of instructions that this actual jury didn't have. You are filtering the evidence through a hypothetical set of appropriate instructions. In my mind, it is absolutely consistent with that. To end the list, we already have two folder instructions, we all think should have been given, even though they weren't, that it needs to be part of Neville's court's analysis. If it were suggested that it cost you a third jury instruction, then nobody could dispute it should have been given in trial, as a jury instruction taking legislative notice about what the trial constitution wants you to do. To drive the jury servant instructed that under the constitution, here are the requirements for the voice of person. Here's the requirements to drive requires the work of the covenantal member. Even if you had such an instruction that there was no testimony from which the jury could filter that information and apply it to the instruction, in other words, the witness took the witness stand to explain what the trial constitution was, what it meant, and what impact it had on India's status. You wouldn't need to necessarily argue, you wouldn't need to, the jury would know undisputed evidence that he was a member of Neville, and they would have a constitution saying that he was born in 1961. The only way one can have a member, become a member of Neville is at least if one of their parents is also clearly identified as Indian, and they prove that circumstantially in trial, then of course the problem is met. They wouldn't require you to do it with advantage of the candidate. Notice the defense could have made a whole argument and taken a brief about how, well, this trial doesn't follow very good instructions and some things that didn't follow. And now we're coming to a question, and so to the extent there's an instructional error in this case and you need to redo it, that's a different issue. But Neville, as you say, hypothetically, what could have a properly instructed jury done, even on this record, a properly instructed jury easily could have found something to speak to the fact that he was a member of Neville and he's a part of the Superior Institution. Counsel, I went through the exercise of looking at both of the trial constitutions here to try and figure out what clauses you would qualify under, and it's a tough analysis to make on this record. Can I, can I? Yeah, I'm sorry. If you could explain to me why it's so easy, I don't know why we're here. Sure. So, the 1930 constitution, I found a few free clauses. Now, obviously, he doesn't qualify under subdivision A. The record shows that he was born in 1961, and it only applies to folks who were born before August 1938, okay? So, August or January, or June, June, January. So, he only could have qualified under subdivision B or subdivision C, right? Although it's much more likely that C would apply to either one hypothetical, it doesn't seem to be all children born to members of the White Mountain Apache Tribe. Correct. So, a one-half degree or more. Correct. Even if it didn't have that language on having one-half degree, it did what? Children born to members of the White Mountain Apache Tribe, that is, children who have two parents or even if I didn't use this, we would qualify. Okay, well, you probably didn't have evidence as a record as to his parents. That's what I'm arguing. If you couple this with the fact that he's American, it means that he necessarily had, his demographics had to fall under B or C, meaning if you make out members of C, both of his parents had to be tribal members and even if they were B, at least one of his parents had to be a quote-unquote enrolled Apache, which would also be sufficient. You only need to have one parent, a great-grandparent, or a great-great-grandparent to fully identify as being European. Okay. And so, because, going back to the child, how about a second constitution? A second constitution says there's two provisions in 1993. The first subdivision, A, all people who were qualified for an acceptance have their membership under the previous version, which we just established he only could have come here under B and C and therefore had to have an Indian parent or B, persons of one-half degree or more of Indian descent. You can go back to that because that's one of the, you can either fail in the first problem by having a sufficient degree of Indian descent, one-half, which means all his first residents, or having parents that were identified in 1992, may have been, if you're, or you can go back to the constitution. I understand. Okay. So, let's say that we, and I'm saying correct him out again because I think you did as best you could to argue why there was sufficient evidence, but let's say we were to disagree with him. Does that mean in fact that he gives a judgment of equivalent among counts, or is there some exception that would allow you to get another bracket? I think again, of course, I don't think there's an exception. I think that, I think that when there's a sufficiency of the evidence, there are a bunch of people who lose on sufficiency and we lose. Even when, as you said, Bob, let me take my best friend and that's it. The law, the rule would be different if the reason that the evidence was not sufficient is that there was an intervening deed in the law after trial. And I think that at a broad brush level, we have achieved an intervening deed to the court with respect to the first withdrawal of the indian citizen. Because I don't believe that's relevant here. I understand. Do you have any explanation for what seems like an almost sitting malpractice of the government's part? I do, and it's something that I share with Mr. Schultz and the floor. It's not on the record, and so that's why I was asking him to bring out, there was an email he received between the defense counsel and the prosecutor before trial where he said, hey, we're just going to bring in the tribal enrollments just to get to the agency. We're not going to object. And there was an agreement between them that's now memorialized in the record on why this stuff is so difficult to do this way. And that's a common thing that happens in these cases. Defense counsels who have been the most definitive in this law have assaulted these children over a period of nine years. The last thing the defense counsel wants to do in trial is be wasting their credibility arguing about this to the parties because they memorialized in the record about how we were going to bring in this entity or this agency to testify about what was going to be smoothed. And hence, one of the difficulties in playing error with you is that because at this you see the increase in the discipline level you could have then seen right in the record with that being introduced at trial essentially that there's no conscience of the fact that he's an Indian. The defense counsel was unwilling to formally stipulate what he was stipulating essentially to the hearsay and vision of the tribal affidavit which disposes of the Confrontation Clause claim and it does not play a very well address the problem of the agent simply testifying without objection. That's the foundation that he's an Indian. I speculate that my understanding is that if you have a case like this
judges: Tallman, Watford, Guirola